Kingsdown, Inc. v. Hinshaw, 2016 NCBC 16.

STATE OF NORTH CAROLINA

ALAMANCE COUNTY

KINGSDOWN, INCORPORATED,

        Plaintiff,

v.

W. ERIC HINSHAW, REBECCA HINSHAW, and ANNE RAY,

        Defendants.

ANNE RAY,

        Third-Party Plaintiff,

v.

FRANK HOOD,

        Third-Party Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 1701


ORDER & OPINION
ON MOTIONS TO STRIKE AND
DISMISS

{1}    **THIS MATTER** is before the Court on (i) Plaintiff Kingsdown Incorporated's ("Plaintiff," "Kingsdown," or the "Company") Motion to Strike, or in the Alternative, Dismiss Amended Counterclaims of Defendant Anne Ray ("Ms. Ray") ("Kingsdown's Motion to Strike"); (ii) Third-Party Defendant Frank Hood's ("Mr. Hood") Motion to Strike, or in the Alternative, Dismiss Amendment to Third-Party Complaint Against Frank Hood ("Hood's Motion to Strike"); (iii) Kingsdown's Motion to Dismiss the Counterclaims of Defendant Anne Ray ("Kingsdown's Motion to Dismiss Ray's Counterclaims"); (iv) Mr. Hood's Motion to Dismiss Third-Party Complaint ("Hood's Motion to Dismiss Ray's Third-Party Complaint"); and (v) Kingsdown's Motion to Dismiss Counterclaims of Defendant Eric Hinshaw ("Mr. Hinshaw") ("Kingsdown's Motion to Dismiss Hinshaw's Counterclaims").[1]

---

[1] Ms. Ray has filed four additional documents that she has captioned as motions: (1) a Motion to Deny Kingsdown's 12(b)(6) Motion to Dismiss Counterclaims of Anne Ray, (2) a

{2} The Court, having considered the parties' Motions, briefs in support of and in opposition to the Motions, appropriate matters of record, and the arguments of counsel made at the October 1, 2015 hearing held in this matter, hereby **GRANTS** Kingsdown's Motion to Strike, **GRANTS** Hood's Motion to Strike, **GRANTS in part** and **DENIES in part** Kingsdown's Motion to Dismiss Ray's Counterclaims, **GRANTS** Hood's Motion to Dismiss Ray's Third-Party Complaint, and **GRANTS in part** and **DENIES in part** Kingsdown's Motion to Dismiss Hinshaw's Counterclaims.

*Mullins Duncan Harrell & Russell PLLC, by Allison Mullins, Alan W. Duncan, and Leslie Cooper Harrell, for Plaintiff Kingsdown, Incorporated.*

*Williams Mullen, by Michael C. Lord, for Third-Party Defendant Frank Hood.*

*Smith Moore Leatherwood LLP, by Robert R. Marcus, Richard A. Coughlin, and Whit D. Pierce, for Defendants W. Eric Hinshaw and Rebecca Hinshaw.*

*William C. Ray, for Defendant Anne Ray.*

Bledsoe, Judge.

I.

PROCEDURAL HISTORY AND BACKGROUND

{3} The procedural and factual background of this case is recited in detail in *Kingsdown, Inc. v. Hinshaw*, 2015 NCBC LEXIS 30 (N.C. Super. Ct.

---

Motion to Deny Frank Hood's 12(b)(6) Motion to Dismiss Third-Party Complaint of Anne Ray, (3) a Motion of Anne Ray to Deny Kingsdown's Motion to Strike, or in the alternative, to Dismiss Amended Counterclaims, and (4) a Motion of Anne Ray to Deny Frank Hood's Motion to Strike, or in the alternative, to Dismiss Amendment to Third-Party Complaint (collectively, the "Motions to Deny"). The Court does not read any of the purported Motions to Deny as intended by Ms. Ray as a separate, standalone motion, and instead understands that Ms. Ray intends each to constitute a brief in opposition to Kingsdown's and Mr. Hood's various motions. Accordingly, the Court will consider each of the Motions to Deny as constituting a brief in opposition to Kingsdown's and Mr. Hood's motions to dismiss and to strike, respectively, and not as separate motions. The Court notes that this is the second time in this case that Ms. Ray has captioned her opposition briefs as "motions to deny." Titling a response brief as a "motion to deny" is neither necessary nor appropriate. Proper titles for a response memorandum in the Business Court include "[Party's] Brief in Opposition to . . . ," "[Party's] Memorandum in Opposition to . . . ," or "[Party's] Response in Opposition to . . . ." Counsel is instructed to proceed accordingly.

Mar. 25, 2015) ("Motion to Dismiss Order"), *Kingsdown, Inc. v. Hinshaw*, 2015 NCBC LEXIS 33 (N.C. Super. Ct. Mar. 25, 2015), and *Kingsdown, Inc. v. Hinshaw*, 2015 NCBC LEXIS 38 (N.C. Super. Ct. Apr. 22, 2015).

{4} In broad summary, Kingsdown initiated this action against Mr. Hinshaw, his wife, Rebecca Hinshaw ("Ms. Hinshaw") (collectively, the "Hinshaws"), and Ms. Ray on August 29, 2014 and subsequently filed an Amended Complaint on September 2, 2014, generally alleging that while serving as Kingsdown's Chief Executive Officer ("CEO") and Chairman of the Board of Directors (the "Board"), Mr. Hinshaw breached his "duty to act in good faith and in the best interests of Kingsdown" by "repeatedly engag[ing] in self-dealing . . . and . . . abus[ing] his position as a fiduciary," which "resulted in substantial benefits for himself, [Ms.] Hinshaw, and Ms. Ray at the expense of Kingsdown." (Am. Compl. ¶¶ 6–7.)

{5} On October 17, 2014, Ms. Ray filed an Answer to Kingsdown's Amended Complaint, Counterclaims against Kingsdown, and a Third-Party Complaint against various third-party defendants, including Mr. Hood. That same day, the Hinshaws filed their Answer to Kingsdown's Amended Complaint, and Mr. Hinshaw asserted Counterclaims against Kingsdown. On November, 4, 2014, Ms. Ray amended as of right her Answer and Counterclaims.

{6} Specifically relevant to the Motions at issue, Ms. Ray next sought the dismissal of the claims against her, and Kingsdown and the then-existing third-party defendants, including Mr. Hood, moved to dismiss Ms. Ray's claims against them. The Court entered the Motion to Dismiss Order on March 25, 2015, in which the Court denied Ms. Ray's motion to dismiss the claims Kingsdown had asserted against her and granted Kingsdown's and the third-party defendants' motions to dismiss the claims against them. Although the Court dismissed most of Ms. Ray's claims with prejudice, the Court dismissed without prejudice (i) Ms. Ray's counterclaims against Kingsdown for breach of contract, declaratory judgment, wrongful

termination, indemnification, and defamation (to the extent the defamation claim relates to alleged statements made by Kingsdown in local newspapers and *Furniture Today*), and (ii) Ms. Ray's third-party claim against Mr. Hood for defamation (to the extent the claim relates to alleged statements made by Mr. Hood in local newspapers and in *Furniture Today*).

{7} Thereafter, Kingsdown, with leave of court, filed its Second Amended Complaint on May 27, 2015. Ms. Ray filed her Answer and Counterclaims in response to the Second Amended Complaint on June 16, 2015 and that same day filed her Second Amendment to Third-Party Complaint against Mr. Hood ("Amended Third-Party Complaint").

{8} The Hinshaws filed their "Answer to Second Amended Complaint, Defenses and Counterclaims of Defendants W. Eric and Rebecca Hinshaw" on July 13, 2015. In the Counterclaims, Mr. Hinshaw[2] asserts claims against Kingsdown for (i) alleged breach of a Separation and Consulting Agreement entered between Mr. Hinshaw and Kingsdown on or about July 10, 2012, (ii) indemnification under Kingsdown's bylaws based on his status as an officer and director, (iii) unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1, (iv) defamation per se based on various statements by Kingsdown that Mr. Hinshaw alleges have impeached him in his trade, business, or profession, and (v) slander of title resulting from Kingsdown's filing of a notice of lis pendens on property Mr. Hinshaw owns at Ocean Isle Beach on the North Carolina coast (the "Ocean Isle Property").

{9} Kingsdown filed its Motion to Dismiss Ray's Counterclaims on July 20, 2015, and its Motion to Dismiss Hinshaw's Counterclaims on August 12, 2015. Mr. Hood filed his Motion to Dismiss Ray's Third-Party Complaint on July 20, 2015.

{10} On August 30, 2015, Ms. Ray sought to amend her counterclaims and her third-party complaint yet again, filing documents titled "Amendment to Counterclaim Against Kingsdown, Incorporated" ("August 30 Amendment

---

[2] The Counterclaims are asserted on behalf of Mr. Hinshaw only.

to Counterclaim") and "Amendment to Third-Party Complaint Against Frank Hood" ("August 30 Amendment to Third-Party Complaint") (together, the "August 30 Amendments"). Ms. Ray filed each August 30 Amendment unilaterally, without seeking leave of Court. Kingsdown and Mr. Hood filed their respective Motions to Strike on September 4, 2015.

{11} The Motions before the Court have been fully briefed, and the Court held a hearing on the Motions on October 1, 2015, at which all parties were represented by counsel. The time for additional submissions and arguments has now expired, and the Motions are ripe for resolution.

II.

LEGAL STANDARD

{12} The question for the Court on a Rule 12(b)(6) motion to dismiss is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987) (citation omitted). "The complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Block v. Cnty. of Person*, 141 N.C. App. 273, 277–78, 540 S.E.2d 415, 419 (2000) (citing *Dixon v. Stuart*, 85 N.C. App. 338, 354 S.E.2d 757 (1987)).

{13} When the complaint fails to allege the substantive elements of some legally cognizable claim, or where it alleges facts that defeat the claim, the complaint should be dismissed under Rule 12(b)(6). *Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 345–46, 511 S.E.2d 309, 312 (1999) (citations omitted). In sum, Rule 12(b)(6) dismissal is proper in any of the following three scenarios: "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact

disclosed in the complaint necessarily defeats the plaintiff's claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985) (citations omitted).

{14}   Rule 12(f) permits a judge, upon motion or *sua sponte*, to "strik[e] from any pleading any insufficient defense or any redundant, irrelevant, immaterial, impertinent, or scandalous matter." N.C. R. Civ. P. 12(f).   The purpose of this rule is to "avoid expenditure of time and resources before trial by removing spurious issues, whether introduced by original or amended complaint." *Estrada v. Jaques*, 70 N.C. App. 627, 642, 321 S.E.2d 240, 250 (1984).   A motion to strike is addressed to the sound discretion of the trial court. *Broughton v. McClatchy Newspapers, Inc.*, 161 N.C. App. 20, 25, 588, S.E.2d 20, 25 (2003).

III.

ANALYSIS

A.   Kingsdown's and Mr. Hood's Motions to Strike

{15}   Kingsdown and Mr. Hood each move pursuant to N.C. R. Civ. P. 12(f) to strike the August 30 Amendments filed against them on the grounds that Ms. Ray was required to obtain leave of court under Rule 15 to file the Amendments and failed to do so.   Rule 15 permits a party to "amend his pleading once as a matter of course at any time before a responsive pleading is served[.]" N.C. R. Civ. P. 15(a).   Kingsdown and Mr. Hood argue that because Ms. Ray had previously amended both her counterclaims and her third-party complaint prior to filing the August 30 Amendments,[3] she was required under Rule 15 to obtain leave of court, which she failed to do. *See* N.C. R. Civ. P. 15(a) ("Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party . . . .").

---

[3] As set forth above, Ms. Ray filed counterclaims against Kingsdown on October 17, 2014, amended counterclaims on February 4, 2014, and amended counterclaims again on June 16, 2015, the last after the Court entered its March 25 Order and Plaintiff had filed its Second Amended Complaint. Ms. Ray filed her third-party complaint against Mr. Hood and other third-party defendants on October 17, 2014 and an amended third-party complaint against Mr. Hood on June 16, 2015.

{16}    In response, Ms. Ray contends that she was entitled to amend her pleadings without seeking leave of Court because Rule 15 should be read to permit amendments "once as a matter of course" in response to each operative pleading rather than once in the lifetime of a litigation. Under Ms. Ray's theory, the filing of Kingsdown's Second Amended Complaint on May 27, 2015 permitted her a new opportunity to amend her counterclaims and third-party complaint without seeking leave of the Court.

{17}    The issue thus posed is whether the amendment "once as a matter of course" provided by Rule 15 permits one amendment during the course of a litigation or one amendment in response to an operative pleading. Neither the parties nor the Court has identified a North Carolina state court decision squarely on point. The Court's research, however, has identified a federal district court decision—*UPEK Inc. v. Authentec, Inc.*, No. 10-424-JF (PVT), 2010 U.S. Dist. LEXIS 76807 (N.D. Cal. July 6, 2010)—which specifically addressed this same issue and these same arguments under Rule 15 of the Federal Rules of Civil Procedure. *Id.* at *3–5.[4] The *UPEK* court examined the legislative history and advisory committee notes concerning Rule 15 and concluded that "once as a matter of course" means once in the life of a lawsuit and, specifically, that the filing of an amended complaint did not "restart[] the clock with respect to [defendant's] entitlement to amend its counterclaims as of right." *Id.* at *3. While not controlling, the Court finds the *UPEK* court's analysis persuasive and consistent with the plain meaning of the language used in North Carolina Rule 15. *See, e.g.*, *Morton Bldgs., Inc. v. Tolson*, 172 N.C. App. 119, 122, 615 S.E.2d 906, 909 (2005) ("'Where the language of a statute is clear and unambiguous, . . . the courts must give it its plain and definite meaning, and are without power to interpolate, or

---

[4] The Court observes that "[d]ecisions under the federal rules are . . . pertinent for guidance and enlightenment in developing the philosophy of the North Carolina rules." *Turner v. Duke Univ.*, 325 N.C. 152, 164, 381 S.E.2d 706, 713 (1989). Absent differences in timing, "Rule 15(a) of the North Carolina rules of Civil Procedure is virtually identical to its federal counterpart." *United Leasing Corp. v. Miller*, 60 N.C. App. 40, 43, 298 S.E.2d 409, 411 (1982).

superimpose, provisions . . . .'") (quoting *State v. Camp*, 286 N.C. 148, 152, 209 S.E.2d 754, 756 (1974)).

{18}   Thus, the Court concludes that because Ms. Ray could not amend her counterclaims or third-party complaint without leave of court, she improperly filed the August 30 Amendments without first obtaining the Court's leave. *See Meekins v. Pub. Schs. of Robeson Cnty.*, No. COA03-747, 2004 N.C. App. LEXIS 607, at *5–6 (N.C. Ct. App. Apr. 20, 2004) (unpublished) (affirming trial court's refusal to consider amended pleading where plaintiff failed to obtain leave of court or defendant's written consent as required under Rule 15).

{19}   Notwithstanding the Court's conclusion, however, the Court may, in the exercise of its discretion, grant Ms. Ray leave to file the August 30 Amendments.   Although Rule 15 plainly instructs that the Court should "freely" grant leave to amend "when justice so requires," N.C. R. Civ. P. 15(a), our courts have made clear that "[r]easons justifying denial of an amendment include: (1) undue delay, (2) bad faith, (3) undue prejudice, (4) futility of amendment, and (5) repeated failure to cure defects by previous amendments." *Window World of St. Louis, Inc. v. Window World, Inc.*, 2015 NCBC LEXIS 79, at *18 (N.C. Super. Ct. Aug. 10, 2015) (citing *Martin v. Hare*, 78 N.C. App. 358, 361, 337 S.E.2d. 632, 634 (1985)).   "Ultimately, whether to allow an amendment rests in the trial judge's discretion." *KRG New Hill Place, LLC v. Springs Investors, LLC*, 2015 NCBC LEXIS 20, at *8 (N.C. Super. Ct. Feb. 27, 2015) (citing *House of Raeford Farms, Inc. v. Raeford*, 104 N.C. App. 280, 282, 408 S.E.2d 885, 887 (1991)).

{20}  Here, Ms. Ray's August 30 Amendments represent her fourth attempt to state her counterclaims against Kingsdown in this matter and her third attempt to plead her claims against Mr. Hood.   Moreover, Ms. Ray's third and fourth attempts to plead her counterclaims and her second and third attempts to plead her third-party complaint came *after* the Court dismissed her counterclaims and third-party complaint without prejudice in

the March 25 Order, and *after* the Court discussed the deficiencies in the dismissed claims at considerable length in that Order.  The Court is satisfied that Ms. Ray has been given the full benefit of the "second chance" the Court sought to afford her to re-plead the claims the Court dismissed without prejudice in the March 25 Order.  *See, e.g.*, *Whedon v. Whedon*, 313 N.C. 200, 212–13, 328 S.E.2d 437, 444–45 (1985) (in deciding whether to dismiss with or without prejudice, "it is the burden of the party whose claim is being dismissed to convince the court that he deserves a second chance").

{21}  The Court has carefully reviewed Ms. Ray's August 30 Amendments and concludes that even if the Court were to grant Ms. Ray leave to amend her pleadings, the Amendment to Counterclaim and the Amendment to Third-Party Complaint is each subject to dismissal for the same reasons, discussed *infra*, that require the dismissal of her operative counterclaims and third-party complaint.  As a result, the Court concludes that Ms. Ray has repeatedly failed to cure the defects in her counterclaims and her third-party complaint by her prior amendments, and that granting Ms. Ray leave to file the August 30 Amendments would be futile.  *See, e.g.*, *N.C. Council of Churches v. State*, 120 N.C. App. 84, 94, 461 S.E.2d 354, 360–61 (1995) (affirming denial of motion to amend as futile since "plaintiff's claims, even as amended, cannot survive [a dispositive motion]").  The Court therefore declines to exercise its discretion to grant Ms. Ray leave to file the August 30 Amendments.

{22}  Accordingly, the Court considers the August 30 Amendments ineffective, and as such they are "immaterial" and have "no possible bearing on the litigation."  *Barnes v. Erie Ins. Exch.*, 156 N.C. App. 270, 280–81, 576 S.E.2d 681, 687–88 (2003) (affirming grant of a Rule 12(f) motion to strike where the pleading was improper under N.C. R. Civ. P. 15(a) and thus was "immaterial and had no possible bearing upon the litigation").  Therefore, Kingsdown's and Mr. Hood's respective Motions to Strike should be granted.  *See, e.g.*, *Joint Redev. Comm'n of Pasquotank v. Jackson-Heard*, No. COA05-

676, 2006 N.C. App. LEXIS 407, at *9 (N.C. Ct. App. Feb. 21, 2006) (unpublished) (stating that "the trial court did not abuse its discretion in striking the counterclaim, in light of defendants' non-compliance with N.C. Gen. Stat. § 1A-1, Rule 15(a)"). *See also Ross v. Lloyds Banking Grp., PLC*, No. 11 Civ. 8530 (PKC), 2013 U.S. Dist. LEXIS 22372, at *11 (S.D.N.Y. Feb. 13, 2013) ("[I]t is wasteful and vexatious to undergo multiple rounds of amendments and motion practice to revisit rudimentary pleading defects.").

B.    Kingsdown's Motion to Dismiss Defendants' Indemnification Claims

{23}   Mr. Hinshaw, as a former Kingsdown officer and director, and Ms. Ray, as a former Kingsdown officer, have each asserted a counterclaim against Kingsdown for indemnification pursuant to Kingsdown's corporate bylaws (the "Bylaws"). Because Defendants' counterclaims for indemnification are nearly identical in all material respects, the Court elects to analyze them together.

{24}   Kingsdown's Bylaws provide that "any indemnification . . . shall be paid . . . only after a determination that the Director or Indemnified Officer . . . did not act in a manner, at the time the activities were taken, that was known or reasonably should have been known . . . to be clearly in conflict with the best interests of [Kingsdown]." (Kingsdown Mot. Dismiss Ray Countercl. Ex. 2, Art. VI § 2.)[5]

{25}   Kingsdown contends that this provision requires Kingsdown's Board to make a determination concerning Mr. Hinshaw's and Ms. Ray's respective conduct as a "mandatory prerequisite" to any duty Kingsdown may have to indemnify either of them under the Bylaws. (Kingsdown Br. Supp. Mot. Dismiss Ray Countercl. 18.) Kingsdown submits that because Kingsdown's

---

[5]   Because Defendants' respective counterclaims specifically refer to and rely upon the Bylaws, the Court may properly consider the Bylaws, even though presented by Kingsdown, without converting Kingsdown's respective motions to motions for summary judgment. *See, e.g., Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001) (On motion under Rule 12(b)(6), the trial court "may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant.") (citation omitted).

Board has not made this required determination as to either Defendant, Mr. Hinshaw's and Ms. Ray's respective counterclaims for indemnification are premature and should be dismissed without prejudice so that the counterclaims can be asserted, if at all, after this litigation has concluded and the Kingsdown Board has made the required determinations in light of the facts established in this action. (Kingsdown Br. Supp. Mot. Dismiss Hinshaw Countercl. 8–9.)

{26} The Court concludes, however, that Kingsdown's factual contention concerning the lack of Board action is contrary to the express allegations in both Mr. Hinshaw's and Ms. Ray's counterclaims. Indeed, Mr. Hinshaw has alleged that he "properly demanded indemnification from Kingsdown" and that "Kingsdown has wrongfully refused to provide the required indemnification." (Hinshaw Countercl. ¶¶ 128–29.) Similarly, Ms. Ray has alleged that she "had duly demanded indemnification from Kingsdown pursuant to Article VI of its Bylaws" and that "Kingsdown has wholly failed and/or refused to indemnify Ms. Ray . . . and sent Ms. Ray a written communication so advising."[6] (Ray Countercl. ¶¶ 53–54.) Therefore, viewing the allegations of Mr. Hinshaw's and Ms. Ray's counterclaims in the light most favorable to them, the Court cannot conclude that their claims for indemnification are premature based on a failure of the Kingsdown Board to make the determination contemplated by the Bylaws.

{27} Accordingly, the Court concludes that Kingsdown's motions to dismiss Defendants' indemnification counterclaims should be denied at this stage of the litigation.[7]

---

[6] Based on counsel's statements at the October 1 hearing, the parties disagreement is primarily one of timing. Kingsdown believes the claims should be dismissed without prejudice and re-pleaded only after a final resolution of the other claims on the merits. Mr. Hinshaw and Ms. Ray, however, believe that Kingsdown's Board has made a final determination sufficient to trigger the statute of limitations and render the claim justiciable.

[7] At the October 1 hearing, the Court discussed with counsel for the parties a potential resolution of the parties' dispute over whether Kingsdown's Board had made a final determination as to Defendants' indemnification demands and thus whether Defendants'

C. <u>Kingsdown's Motion to Dismiss Ms. Ray's Counterclaims</u>

　　a. <u>Breach of Contract</u>

{28} Ms. Ray alleges that she had three separate contracts with Kingsdown: (i) a written employment agreement in the form of a letter dated December 5, 2011 to Ms. Ray from Mr. Hinshaw, as Kingsdown's CEO, which she attached as Exhibit A to her Amended Counterclaims, (Ray Countercl. ¶ 23) (the "Written Agreement"); (ii) a "verbal employment agreement" by which she alleges Mr. Hinshaw, acting on behalf of Kingsdown, "continued to advise Ms. Ray that she should expect to retire from the Company" and that "she would continue to receive pay increases over a period of years such that she would eventually earn an annual salary at the one hundred thousand dollar level," (Countercl. ¶¶ 24, 6, 7) (the "Verbal Agreement"); and (iii) "a written agreement with reference to employment with Kingsdown pursuant to its Employee Handbook in effect at the time of her termination." (Countercl. ¶ 24) (the "Handbook"). Ms. Ray alleges that Kingsdown violated each of these alleged agreements by terminating her employment and by not paying her the compensation she claims she is entitled to receive under the terms of the alleged agreements.[8]

---

indemnification counterclaims were premature. At the hearing, counsel for Kingsdown indicated a willingness to consult with Kingsdown's Board as to whether the Board had, in its view, made a final determination as to Mr. Hinshaw's and Ms. Ray's indemnification demands. Kingsdown's counsel subsequently advised the Court that Kingsdown's Board "discussed the indemnification request during executive session and determined that Mr. Hinshaw and Ms. Ray do not satisfy the requirements for indemnification under the Corporation's bylaws or otherwise at this time." Kingsdown's counsel further advised that "[t]he Board will consider the demands to be continuing, however, and will review the demands at the conclusion of the litigation unless intervening circumstances (such as resolution) moot any such demand." (E-mail from Kingsdown Counsel, Nov. 12, 2015). The Court may not and does not consider this information from the Kingsdown Board for purposes of Plaintiff's current Motions, but the Court anticipates that evidence of the Board's actions concerning Mr. Hinshaw's and Ms. Ray's indemnification demands may properly be considered at a later stage of the litigation.

[8] The Court may consider both the alleged Written Agreement and the Handbook on this Motion to determine whether a contract did, in fact, exist between the parties. *See, e.g.*, *Schlieper v. Johnson*, 195 N.C. App. 257, 261, 672 S.E.2d 548, 551 (2009) ("When documents are attached to and incorporated into a complaint, they become part of the complaint and may be considered in connection with a Rule 12(b)(6) motion without converting it into a

{29} The Court first addresses the alleged "Written Agreement," which provides, in relevant part, as follows:

> When you came to work with the company I promised that if you proved to be a good and valuable employee, I would, over a period of years, get your salary level to the $100,000 range. . . .
>
> As a result of all this, and for your commitment not to seek other employment, I am putting into writing the company's offer and commitment to you that you are hereby guaranteed employment with Kingsdown, Incorporated until your twenty fifth anniversary date with the company. Additionally, your salary will continue to be increased over the next five years such that you will be able to enjoy a salary of the $100,000s that I promised to you during the latter years of your employment. Lastly, Kingsdown, Incorporated hereby commits to you that your annual benefits package will be delivered proportionate to other officers of the company and that they will never be reduced unless general business conditions would require that all officers of the company suffer a similar reduction.

(Ray Countercl. Ex. A.)

{30} It is axiomatic that "[w]here a material term to a contract is missing, the agreement is not legally binding upon the parties." *Fletcher, Barnhardt & White, Inc. v. Matthews*, 100 N.C. App. 436, 440, 397 S.E.2d 81, 83 (1990). Kingsdown argues here that the Written Agreement lacks two material terms necessary for a binding and enforceable contract; first, an agreement as to definite and certain compensation, and second, an agreement as to the nature and extent of the services that Ms. Ray was to perform. (Kingsdown Br. Supp. Mot. Dismiss Ray Countercl. 5.)

{31} Of particular relevance here, "[a] contract for service must be certain and definite as to the nature and extent of the service to be performed, the place where, and the person to whom it is to be rendered, and

---

motion for summary judgment."); *Woolard v. Davenport*, 166 N.C. App. 129, 133–34, 601 S.E.2d 319, 322 (2004) ("Documents attached as exhibits to the complaint and incorporated therein by reference are properly considered when ruling on a 12(b)(6) motion."). The Court also "may reject allegations that are contradicted by documents attached to the [amended] complaint." *Schlieper*, 195 N.C. App. at 265, 672 S.E.2d at 553.

the compensation to be paid, or it will not be enforced." *Croom v. Goldsboro Lumber Co.*, 182 N.C. 217, 220, 108 S.E. 735, 737 (1921) (citation omitted); *see, e.g.*, *Humphrey v. Hill*, 55 N.C. App. 359, 360, 285 S.E.2d 293, 295 (1982) (citing *Croom* to similar effect). Kingsdown contends that the Written Agreement is not a valid contract for the failure of each of these requirements.

{32} As an initial matter, the Court concludes that the Written Agreement is sufficiently definite as to the nature of Ms. Ray's service and the circumstances of the performance of her duties to survive Kingsdown's motion. The Written Agreement recites her ongoing service to the Company and her role of corporate secretary, supporting the conclusion that Ms. Ray was to continue performing her same job in the capacity she had previously performed it.

{33} Regarding compensation, the Written Agreement reflects the parties' agreement to "get [Ms. Ray's] salary level to the $100,000 range" with raises over a five year period "such that [she] will be able to enjoy a salary of the $100,000s that [Mr. Hinshaw] promised [her] during the latter years of [her] employment." Kingsdown contends that the Written Agreement is void for vagueness because it fails to specify a definite salary. Ms. Ray, however, alleges the $100,000 figure is a minimum, and therefore a definite, salary. (Ray Countercl. ¶ 12.)

{34} On the face of the purported contract, without further evidence, both parties present reasonable interpretations of the document. Kingsdown cogently argues that a salary "range" "of the $100,000s" without a clear start or end point creates serious problems for enforcement. (Kingsdown Br. Supp. Mot. Dismiss 5.) Nevertheless, Ms. Ray's allegation of a minimum salary, taken as true, is likewise supported by the Written Agreement. The plain meaning of the explicit repetition of $100,000 suggests that her salary will reach at least this amount, even if the Written Agreement is unclear concerning higher salary levels. As such, the Court concludes that, under

Ms. Ray's theory, the Written Agreement does not fail for uncertainty as a matter of law. *See generally Volumetrics Med. Imaging, Inc. v. ATL Ultrasound, Inc.*, 243 F. Supp. 2d 386, 401 (M.D.N.C. 2003) (applying North Carolina law and collecting cases for the proposition that a promise to pay a minimum amount plus an additional unspecified amount is enforceable for the minimum amount); *Arndt v. First Union Nat'l Bank*, 170 N.C. App. 518, 523–24, 613 S.E.2d 274, 279 (2005) (upholding oral contract to pay a bonus of twenty percent of an employee's net income when the parties did not specifically agree on the formula to compute net income).

{35} "An ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 525, 723 S.E.2d 744, 748 (2012). The Court must conclude that, on the basis of the document, the Written Agreement is ambiguous and susceptible to multiple meanings, under one of which Ms. Ray has alleged the breach of a valid contract. Therefore, the Court denies Kingsdown's motion to dismiss Ms. Ray's contract claim on the basis of the Written Agreement. *WakeMed v. Surgical Care Affiliates, LLC*, 778 S.E.2d 308, 314 (N.C. Ct. App. 2014) (reversing the trial court's Rule 12(b)(6) dismissal of breach of contract claim where the underlying contract was ambiguous).

{36} As to the alleged Verbal Agreement, Ms. Ray alleges that she "had a verbal employment agreement with the Company as described in paragraph 6 and 7 above." (Ray Countercl. ¶ 24.) Those paragraphs recite Ms. Ray's work for the Company, including her earlier promotion, and describe Mr. Hinshaw's statements that she could "expect to retire from Kingsdown" and "receive pay increases over a period of years such that she would eventually earn an annual salary at the one hundred thousand dollar level." (Ray Countercl. ¶¶ 6–7.) Taking these allegations as true, Ms. Ray has not alleged any consideration supporting the Verbal Agreement. "A bare promise, made

without consideration, creates no legal rights and imposes no legal obligations." *Stonestreet v. S. Oil Co.*, 226 N.C. 261, 263, 37 S.E.2d 676, 677 (1946). Ms. Ray alleges that these promises were made "because of her hard work and dedication," (Ray Countercl. ¶ 7), but past consideration is not adequate to support a contract. *Estate of Graham v. Morrison*, 168 N.C. App. 63, 70, 607 S.E.2d 295, 300 (2005). For this reason, the Court dismisses Ms. Ray's amended counterclaim for breach of contract on the basis of the Verbal Agreement.

{37} Finally, as to Ms. Ray's breach of contract claim based on Kingsdown's alleged violation of the Handbook, the Court notes that, under North Carolina law, an employee handbook or policy manual generally does not create a contractual agreement between employer and employee. *See, e.g.*, *Walker v. Westinghouse Elec. Corp.*, 77 N.C. App. 253, 259, 335 S.E.2d 79, 83–84 (1985). Only if the terms of the handbook are expressly incorporated into a separately existing employment contract will the terms of the handbook become legally binding. *Id.* (citing *Smith v. Monsanto Co.*, 71 N.C. App. 632, 322 S.E.2d 611 (1984)); *see Rosby v. Gen. Baptist State Convention*, 91 N.C. App. 77, 81, 370 S.E.2d 605, 608 (1988) (holding that manual received at point of hire, which included conditions of employment, expected conduct of the employer and employee, and procedures to be followed for disciplinary actions, was not binding because it was not expressly included within employee's oral terminable-at-will contract). Neither Ms. Ray's allegations nor the excerpts from the Employee Handbook attached as Exhibit C to Ms. Ray's Amended Counterclaims allege that the Handbook's provisions were expressly incorporated into either the Written or Verbal Agreement. As such, Ms. Ray's amended counterclaim for breach of contract on this basis should be dismissed.

{38} Moreover, even if the Handbook did create a binding contract with Ms. Ray, the Handbook specifically provides that "Kingsdown may also terminate the employment relationship without following any particular

series of steps whenever it determines, in its own discretion, that termination should occur," and outlines a four-step disciplinary process the Handbook states Kingsdown may choose to disregard "when it feels that circumstances warrant." (Ray Countercl. Ex. C.) As such, even if the Handbook was binding, Ms. Ray has not alleged a viable claim for breach.

{39} Accordingly, the Court concludes that Ms. Ray's claim for breach of contract should be allowed to proceed as to the Written Agreement and dismissed as to the Verbal Agreement and the Handbook.

### b. Declaratory Judgment

{40} Ms. Ray has asserted a declaratory judgment claim seeking a judicial determination that her alleged contract with Kingsdown is enforceable. Because the Court has concluded that Ms. Ray's breach of contract claim against Kingsdown should be permitted to proceed solely based on the alleged Written Agreement, Ms. Ray's declaratory judgment claim seeking enforcement of that Agreement should likewise be permitted to proceed at this stage of the litigation. However, because the Court has elected to dismiss Ms. Ray's amended counterclaim for breach of contract based on the alleged Verbal Agreement and the Handbook, Ms. Ray's declaratory judgment claim seeking enforcement of these same purported contracts is moot and should likewise be dismissed. *See, e.g.*, *Nakell v. Liner Yankelevitz Sunshine & Regenstreif, LLP*, No. 1:04CV00820, 2006 U.S. Dist. LEXIS 94128, at *26 n.8 (M.D.N.C. Dec. 29, 2006) (dismissing declaratory judgment claim as moot in light of resolution of breach contract claim involving same contract).

### c. Wrongful Termination

{41} As this Court explained in the Motion to Dismiss Order:

> In North Carolina, employment is generally terminable by either the employer or employee for any reason where no contract exists specifying a definite period of employment. This is a bright-line rule with very limited exceptions. An at-will employee may not be terminated: (1) for refusing to violate the law at the employers [sic] request, (2) for engaging in a legally

protected activity, or (3) based on some activity by the employer contrary to law or public policy.

*McDonnell v. Tradewind Airlines, Inc.*, 194 N.C. App. 674, 677, 670 S.E.2d 302, 305 (internal citations and quotation marks omitted).

{42} As the statement of the rule in *McDonnell* makes plain, the "tort of wrongful discharge arises only in the context of employees at will." *Doyle v. Asheville Orthopaedic Assocs., P.A.*, 148 N.C. App. 173, 174, 557 S.E.2d 577, 577 (2001). Ms. Ray, however, does not allege that she was an at-will employee. To the contrary, as discussed above, she claims that she was promised employment at Kingsdown until her retirement under the terms of the Written Agreement. As a result, Ms. Ray's remedy is limited to her claim for breach of contract, and her wrongful discharge claim should be dismissed. *Id.* ("[b]reach of contract is the proper claim for a wrongful discharged employee who is employed for a definite term or an employee subject to discharge only for "just cause."); *see, e.g., Trexler v. Norfolk S. Ry. Co.*, 145 N.C. App. 466, 471–72, 550 S.E.2d 540, 543 (2001) (holding union employee subject to discharge pursuant to terms of collective bargaining agreement had cause of action in contract, but not for tort of wrongful discharge); *see also Hill v. Medford*, 158 N.C. App. 618, 627, 582 S.E.2d 325, 331 (Martin, J., dissenting), *rev'd*, 357 N.C. 650, 588 S.E.2d 467 (2003) (adopting Judge Martin's dissent) (holding that when an at-will employee is terminated and brings a wrongful discharge claim, the employee "does not have a claim for breach of contract against his or her employer on that basis.").

{43} Although our courts have recognized that a party may "allege that he was an at-will employee with a tort claim for wrongful discharge or, alternatively, a contract employee with a breach of contract claim," *Hill*, 158 N.C. App. at 625–26, 582 S.E.2d at 330, Ms. Ray has not pleaded her claims for breach of contract and for wrongful discharge in the alternative. As a result, her wrongful discharge claim is properly dismissed at this stage of the litigation.

{44} Moreover, even if Ms. Ray's Amended Counterclaims could be read to have asserted her wrongful discharge claim in the alternative,[9] the claim would still be properly dismissed as a matter of law. Ms. Ray alleges in her amended counterclaim that Kingsdown terminated her employment (i) in "an attempt to quiet her from disclosing knowledge of certain unlawful activities of the Company," (Ray Countercl. ¶ 33), (ii) because she "was friends with Eric [i.e., Mr. Hinshaw]," (Ray Countercl. ¶ 34), (iii) because of her "insistent attempts to meet with management and the Chairman of the Board of Kingsdown to reveal what she believed to be illegal activities being engaged in by certain officers, directors and consultants of the Company," (Ray Countercl. ¶ 35(a)), (iv) because of her "refusal to resign" after she suffered "intimidation tactics" by certain Kingsdown agents "based on her knowledge . . . that Kingsdown's counsel and assistant secretary . . . demanded that a corporate stock certificate be 'back-dated'," (Ray Countercl. ¶ 35(b)), and (v) because of her "knowledge and questions concerning . . . the redacting of minutes of meetings of the Board of Directors of Kingsdown" and the "failure to record" truthfully certain "minutes of the Executive Committee." (Ray Countercl. ¶ 35(c).)

{45} Ms. Ray's allegations are insufficient to permit her wrongful termination claim to survive Kingsdown's motion. First, while she alleges that she had "knowledge" of certain corporate information, she does not allege that Kingsdown instructed her to violate the law or that she was terminated for refusing to violate the law at Kingsdown's request. As a result, Ms. Ray's amended counterclaim fails to satisfy the first exception to North Carolina's at-will employment rule. *See generally Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989) (reversing dismissal

---

[9] Our Court of Appeals has held that, "[w]hile the better practice would be to use specific language to the effect that such claims are brought in the alternative," under certain facts a plaintiff is not required to identify alternatively pleaded claims expressly as such, because N.C. R. Civ. P. 8(e)(2) does not mandate a particular form for phrasing alternative claims. *Oxendine v. Bowers*, 100 N.C. App. 712, 716, 398 S.E.2d 57, 59–60 (1990).

where employer wrongfully discharged plaintiff for refusal to violate federal regulations and refusal to falsify records); *Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 416 S.E.2d 166 (1992) (reversing dismissal where employer wrongfully discharged plaintiffs for refusing to work for less than the statutory minimum wage in violation of state statute).

{46} Next, Ms. Ray's contentions that she was terminated because she was friends with Mr. Hinshaw, because she was insistent in her efforts to confront management to reveal what she considered illegal activity, and because she refused to resign do not constitute allegations that she was terminated for engaging in legally protected activity under the law in the circumstances pleaded here.

{47} First, although the Court has not located a North Carolina decision on point, federal courts have routinely concluded that work friendships do not constitute a constitutionally protected association or legally protected activity for purposes of Title VII. *See, e.g.*, *Burton v. Pa. State Police*, 612 Fed. Appx. 124, 128 (3d Cir. 2015) (holding work friendship not legally protected activity in rejecting retaliation claim); *Drake & Minn. Mining & Mfg. Co.*, 134 F.3d 878, 886 (7th Cir. 1998) (stating that providing spiritual guidance and friendship does not constitute engaging in a protected activity); *see also Bevill v. Home Depot U.S.A., Inc.*, 753 F. Supp. 2d 816, 832 (S.D. Iowa 2009) (holding "friendship with an individual embroiled in discrimination litigation, without more, does not constitute protected activity"). The Court finds these federal cases persuasive and rejects Plaintiff's contention that her friendship with Mr. Hinshaw constitutes legally protected activity for purposes of her wrongful discharge claim.

{48} Second, while Ms. Ray alleges that she was discharged because of her "insistent attempts" to meet with management and Kingsdown's Board chair "to reveal" alleged wrongdoing, she nowhere alleges that she explained to anyone at Kingsdown why she sought to meet with management or revealed to anyone at Kingsdown that she claimed knowledge of alleged

corporate wrongdoing. As such, Ms. Ray has failed to allege that Kingsdown had knowledge that Ms. Ray was engaged in purported protected activity, which is fatal to her claim. *See, e.g.*, *Robinson v. Univ. of N.C. Health Care Sys.*, 775 S.E.2d 898, 902 (N.C. Ct. App. 2015) (dismissing Title VII retaliation claim because "respondent had no knowledge that petitioner was engaged in a protected activity"); *see also, e.g.*, *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (holding that "the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary" to establish a claim of retaliation, and that "an employer cannot take action because of a factor of which it is unaware").

{49} Finally, Ms. Ray fails to allege an express public policy declaration in a statute or in the North Carolina Constitution that she contends Kingsdown has violated. As a result, the Court concludes that Ms. Ray's amended counterclaim does not fall within the third exception to North Carolina's at-will employment rule. *See, e.g.*, *Hopkins v. MWR Mgmt. Co.*, 2015 NCBC LEXIS 104, at *11 (N.C. Super. Ct. Nov. 5, 2015) ("To state a claim, a plaintiff is required to allege specific conduct that violated a specific expression of North Carolina public policy.") (citing *Considine v. Compass Grp. USA, Inc.*, 145 N.C. App 314, 321–22, 551 S.E.2d 179, 184 (2001)).

{50} Because Ms. Ray fails to allege facts that permit the Court to conclude that her amended counterclaim falls within one of the narrow recognized exceptions to the at-will employment doctrine, the Court concludes that her wrongful discharge counterclaim should be dismissed on this additional ground.

### d. Defamation

{51} Ms. Ray's amended counterclaim for defamation is based entirely on statements made by Kingsdown's CEO, Frank Hood, which were published in an industry magazine titled *Furniture Today* shortly after this litigation was commenced:

> [T]he claims made against Mr. Hinshaw and the other defendants were considered with great care and deliberation by Kingsdown's board of directors. We believe that the claims have merit and that Kingsdown's shareholders were harmed as a result of the actions described in the amended complaint.

(Ray Countercl. ¶ 43.)[10]

{52} In order to recover for defamation, "a plaintiff must allege and prove that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." *Tyson v. L'eggs Prods., Inc.*, 84 N.C. App. 1, 10–11, 351 S.E.2d 834, 840 (1987). Truth is a defense to a defamation claim. *Holleman v. Aiken*, 193 N.C. App. 484, 496, 668 S.E.2d 579, 587 (2008).

{53} "The term defamation covers two distinct torts, libel and slander." *Phillips v. Winston-Salem/Forsyth Cnty. Bd. of Educ.*, 117 N.C. App. 274, 277, 450 S.E.2d 753, 756 (1994). "In general, libel is written while slander is oral." *Tallent v. Blake*, 57 N.C. App. 249, 251, 291 S.E.2d 336, 338 (1982). While it is clear that Ms. Ray alleges a claim for libel based on the publication of the statements in *Furniture Today*, it is not clear from the allegations of the Amended Counterclaims whether Ms. Ray is also asserting a claim for slander. Reading her allegations expansively on this Motion, the Court will consider the statements about which she complains to have been made both orally and in writing, and thus that her claims are for both libel and slander. *See, e.g.*, *Phillips*, 117 N.C. App. at 278, 450 S.E.2d at 756 (1994) ("When defamatory words are spoken with the intent that the words

---

[10] Although Ms. Ray did not attach to her Amended Counterclaims the *Furniture Today* article that is the focus of her defamation claim, Kingsdown attached the article as Exhibit 1 to its Motion to Dismiss. Because the article is the subject of Ms. Ray's defamation claim and is quoted in Ms. Ray's Amended Counterclaims, the Court may consider the article on this Motion without converting Kingsdown's Motion to Dismiss under Rule 12(b)(6) into a motion for summary judgment under Rule 56. *See, e.g.*, *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009) ("documents attached, specifically referred to, or incorporated by reference in the complaint" may properly be considered in Rule 12 motion to dismiss without converting motion to summary judgment) (citation omitted).

be reduced to writing, and the words are in fact written, the publication is both slander and libel.").

{54} North Carolina law recognizes three classes of libel: "(1) publications obviously defamatory which are called libel per se; (2) publications susceptible of two interpretations one of which is defamatory and the other not; and (3) publications not obviously defamatory but when considered with innuendo, colloquium, and explanatory circumstances become libelous, which are termed libels per quod." *Arnold v. Sharpe*, 296 N.C. 533, 537, 251 S.E.2d 452, 455 (1979). North Carolina law also recognizes two classes of slander: (i) slander per se and (ii) slander per quod. *Donovan v. Fiumara*, 114 N.C. App. 524, 527, 442 S.E.2d 572, 574 (1994).

{55} Turning first to libel per se and slander per se, our courts have held:

> "[l]ibel per se is a publication which, *when considered alone without explanatory circumstances*: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace."

*Nucor Corp. v. Prudential Equity Grp., LLC*, 189 N.C. App. 731, 736, 659 S.E.2d 483, 486 (2008) (quoting *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 29, 568 S.E.2d 893, 898 (2002)).

{56} Similarly, slander per se is "an oral communication to a third person which amounts to (1) an accusation that the plaintiff committed a crime involving moral turpitude; (2) an allegation that impeaches the plaintiff in his trade, business, or profession; or (3) an imputation that the plaintiff has a loathsome disease." *Phillips*, 117 N.C. App. at 277, 450 S.E.2d at 756; *see, e.g.*, *Donovan*, 114 N.C. App. at 527, 442 S.E.2d at 574 (describing slander per se as false remarks that "in themselves (per se) may form the basis of an action for damages, in which case both malice and damage are, as a matter of law, presumed") (citation omitted).

{57} More specifically:

[D]efamatory words to be libelous per se must be susceptible of *but one meaning* and of such nature that *the court* can presume *as a matter of law* that they tend to disgrace and degrade the party or hold him up to public hatred, contempt or ridicule, or cause him to be shunned and avoided. Although someone cannot preface an otherwise defamatory statement with 'in my opinion' and claim immunity from liability, a pure expression of opinion is protected because it fails to assert actual fact. This Court considers how the alleged defamatory publication would have been understood by an average reader. In addition, the alleged defamatory statements must be construed only in the context of the document in which they are contained, stripped of all insinuations, innuendo, colloquium and explanatory circumstances. The articles must be defamatory on its face within the four corners thereof.

*Nucor*, 189 N.C. App. at 736, 659 S.E.2d at 486–87 (citations and quotations omitted).

{58} Applying these principles to the allegedly defamatory statements here, the Court concludes that Ms. Ray's amended counterclaim does not state a sustainable claim for libel per se or for slander per se. In particular, the Court concludes that the statements, when read in context, do not impeach Ms. Ray in her profession and thus are not defamatory. Neither statement, even if assumed to be false, is susceptible of only a single meaning that disgraces or degrades Ms. Ray. To the contrary, the full context of the statements includes that they appeared in an article "relating to Kingsdown's lawsuit against [Defendants]" in which Mr. Hinshaw is quoted as saying that Kingsdown's claims against him are "reckless." As such, the reported statements of both Mr. Hinshaw and Mr. Hood are fairly understood as simply reflecting their respective positions in the pending litigation and their opinions concerning the strength of their respective cases. Such statements are understood by the average reader or hearer as statements of opinion rather than of objective, verifiable facts, and as such, do not constitute libel per se or slander per se. *See, e.g., Daniels v. Metro Magazine Holding Co.*, 179 N.C. App. 533, 539, 634 S.E.2d 586, 590 (2006) ("Rhetorical hyperbole

and expressions of opinion not asserting provable facts are protected speech.") (citation omitted).

{59}   The Court's conclusion finds further support in our Court of Appeals' observation that in far more egregious circumstances than those alleged here, "North Carolina cases have held consistently that alleged false statements made by [a former employer], calling [a former employee] 'dishonest' or charging that plaintiff was untruthful and an unreliable employee, are not actionable per se." *Pierce v. Atl. Grp., Inc.*, 219 N.C. App. 19, 23, 724 S.E.2d 568, 572 (2012).   As such, Ms. Ray's conclusory contentions that the statements disgrace and degrade her are not supported by factual allegations and impermissibly rely on speculation and conjecture.  *See Renwick v. News & Observer Pub. Co.*, 310 N.C. 312, 318, 312 S.E.2d 405, 409 (1984) ("The question always is how would ordinary men naturally understand the publication. . . . The fact that supersensitive persons with morbid imaginations may be able, by reading between the lines of an article, to discover some defamatory meaning therein is not sufficient to make them libelous.") (citation omitted).

{60}   Moreover, it cannot be disputed that the statements at issue do not mention Ms. Ray or that her name does not appear anywhere in the article at issue.  The average person would necessarily require additional information to know that Ms. Ray is among the "defendants" mentioned in the article, a further fatal deficiency in Ms. Ray's claims for libel per se or slander per se.  *See, e.g., id.* ("[T]he article alone must be construed, stripped of all insinuations, innuendo, colloquium and explanatory circumstances.   The article must be defamatory on its face 'within the four corners thereof.'") (quotations omitted).

{61}   Turning next to the second class of libel recognized by our courts— where a publication is susceptible of two interpretations one of which is defamatory and the other not—the Court first notes that Ms. Ray has not pleaded that the statements in the article are susceptible of two

interpretations. As such, Ms. Ray's amended counterclaim cannot survive as alleging secondary libel. *See, id.*, 310 N.C. at 318, 312 S.E.2d at 410 (dismissing libel claim because plaintiff failed to assert a valid libel per se claim and because "plaintiff's complaints failed to allege any class of libel other than libel per se"). Moreover, even if Ms. Ray had pleaded such a claim, the Court's conclusion that the statements in the article are not defamatory necessarily requires dismissal of a claim based on this second class of libel, which requires that an average reader understand at least one interpretation of the article to be defamatory.

{62} Last, our courts have held that a claim based on the third class of libel—libel per quod—"may be asserted when a publication is not obviously defamatory, but when considered in conjunction with innuendo, colloquium, and explanatory circumstances it becomes libelous." *Nguyen v. Taylor*, 200 N.C. App. 387, 392, 684 S.E.2d 470, 474 (2009) (citing *Ellis v. N. Star Co.*, 326 N.C. 219, 223, 388 S.E.2d 127, 130 (1990)). Similarly, slander per quod "comprises a remark which is not defamatory on its face but causes injury with 'extrinsic, explanatory facts.'" *Donovan*, 114 N.C. App. at 527, 442 S.E.2d at 574–75 (quoting *Badame v. Lampke*, 242 N.C. 755, 757, 89 S.E.2d 466, 467 (1955)).

{63} Significantly for this case, "[t]o state a claim for libel per quod, a party must specifically allege and prove special damages as to each plaintiff." *Nguyen*, 200 N.C. App. at 393, 684 S.E.2d at 475 (citing *Griffin v. Holden*, 180 N.C. App. 129, 138, 636 S.E.2d 298, 305 (2006) ("[T]he facts giving rise to the special damages must be alleged so as to fairly inform the defendant of the scope of plaintiff's demand.") (internal quotation omitted)). Similarly, slander per quod relates to false remarks which may "sustain an action only when causing some special damages (per quod), in which case both the malice and the special damage must be alleged and proved." *Beane v. Weiman Co., Inc.*, 5 N.C. App. 276, 277, 168 S.E.2d 236, 237 (1969) (holding that "the

injurious character of the words and some special damage must be pleaded and proved") (citation omitted).

{64} Ms. Ray, however, has failed to allege any special damages sufficient to sustain her claim on a per quod theory, alleging only that the publication of the article "was specifically detrimental to the employment of Ms. Ray," (Ray Countercl. ¶ 44), and that "Mr. Hood knew, or should reasonably have known, that the statement would impugn Ms. Ray's reputation." (Ray Countercl. ¶ 45.) These conclusory allegations are insufficient to inform Kingsdown of the scope of Ms. Ray's demand. *See, e.g.*, *Pierce*, 219 N.C. App. at 35, 724 S.E.2d at 579 ("We do not believe that Plaintiff's allegation that the alleged defamation 'damaged . . . [Plaintiff's] economic circumstances' fairly informs Defendants of the scope of Plaintiff's demand. Therefore, we conclude the trial court did not err by dismissing Plaintiff's claim of libel per quod . . . ."). These allegations are also unsupported by any factual allegations indicating the circumstances of any alleged special damages or the amount claimed. *See, e.g.*, *Skinner v. Reynolds*, 764 S.E.2d 652, 657 (N.C. Ct. App. 2014) (dismissing libel per quod claim because conclusory allegation that plaintiff suffered unspecified "lost wages" and "expenses" associated with "mitigating the defamation" failed to state "facts indicating the circumstances of the alleged special damages or the amount claimed"). As such, the Court concludes that Ms. Ray's amended counterclaim for libel per quod and slander per quod should also be dismissed.

{65} In sum, the Court concludes that Ms. Ray has failed to allege an actionable defamation claim based on any of the classes of libel and slander recognized under North Carolina law. As a result, Ms. Ray's amended counterclaim for defamation should be dismissed.[11]

---

[11] The Court also concludes that to the extent Ms. Ray's defamation counterclaim is based on statements in the article that were quoted from Plaintiff's pleadings in this case, those statements are not actionable. *See, e.g.*, *Rickenbacker v. Coffey*, 103 N.C. App. 352, 356, 405 S.E.2d 585, 587 (1991) ("The general rule is that a defamatory statement made in due course

e. Punitive Damages

{66} "Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded: (1) fraud; (2) malice; (3) willful or wanton conduct." N.C. Gen. Stat. § 1D-15(a) (2014). Mere breaches of contract cannot support a claim for punitive damages. *Richardson v. Bank of Am., N.A.*, 182 N.C. App. 531, 558, 643 S.E.2d 410, 427 (2007). North Carolina's Supreme Court has repeatedly held that a breach of contract claim may in limited circumstances allow for punitive damages if the breach "also constitutes or is accompanied by an identifiable tortious act" and the tortious conduct involves some aggravating element. *Shore v. Farmer*, 351 N.C. 166, 170, 522 S.E.2d 73, 76 (1999) (quoting *Stanback v. Stanback*, 297 N.C. 181, 196, 254 S.E.2d 611, 621 (1979)).

{67} As explained above, the Court has concluded that each of Ms. Ray's amended counterclaims should be dismissed, except for her amended counterclaims for breach of contract and declaratory judgment as to the Written Agreement and for indemnification. As pleaded here, Ms. Ray's indemnification claim is in the nature of a breach of contract claim based on Kingsdown's alleged breach of its Bylaws. She has not alleged any "identifiable torts accompanied by aggravation" in connection with any of the surviving claims. In particular, she has not alleged, apart from conclusory statements that Kingsdown's acts were "willful, wanton, [and] intentional," (Ray Countercl. ¶¶ 31, 58), that Kingsdown's alleged breach of her contract or its alleged failure to indemnify involves any alleged fraud or deceit. *See Bentley v. N.C. Ins. Guar. Ass'n*, 107 N.C. App. 1, 6, 418 S.E.2d 705, 708 (1992) ("Punitive or exemplary damages may be recovered in breach of contract actions that smack of tort because of the fraud and deceit involved or

of a judicial proceeding is absolutely privileged and will not support a civil action for defamation, even though it be made with express malice.").

those actions with substantial tort overtones emanating from the fraud and deceit."). As a result, the Court concludes that Ms. Ray's claim for punitive damages cannot be sustained under North Carolina law and should be dismissed.

D. Mr. Hood's Motion to Dismiss Ms. Ray's Third-Party Complaint

{68} Ms. Ray's Third-Party Complaint pleads a single cause of action for defamation. Ms. Ray's allegations in support of her defamation claim against Mr. Hood are substantially similar to the allegations the Court has found fatally deficient in her defamation counterclaim against Kingsdown. The only substantive allegations Ms. Ray has asserted against Mr. Hood that she did not assert against Kingsdown relate to her contention that Mr. Hood's statements caused her to be "exceedingly embarrassed, emotionally harmed and distraught over the possibility she would be terminated from her new employment." (Third-Party Compl. ¶ 31.) Our courts have made clear, however, that "in the context of an action for defamation, special damage means pecuniary loss," *Donovan*, 114 N.C. App. at 527, 442 S.E.2d at 575, and that "emotional distress and mental suffering are not alone sufficient." *Freight Lines and Willard v. Freight Lines*, 10 N.C. App. 384, 390, 179 S.E.2d 319, 324 (1971). Accordingly, because Ms. Ray's additional allegations against Mr. Hood are insufficient to plead special damages under North Carolina law, the Court concludes that Ms. Ray's defamation claim against Mr. Hood should be dismissed for the same reasons Ms. Ray's defamation counterclaim should be dismissed against Kingsdown.

E. Kingsdown's Motion to Dismiss Mr. Hinshaw's Counterclaims

{69} Mr. Hinshaw has asserted five counterclaims against Kingsdown: (i) breach of contract, (ii) indemnification, (iii) unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1, (iv) defamation per se, and (v) slander of title. Kingsdown's Motion to Dismiss Hinshaw's Counterclaims seeks the dismissal of each counterclaim with prejudice.

a. Breach of Contract

{70} Mr. Hinshaw's breach of contract claim is based on Kingsdown's alleged breach of certain provisions of a Separation and Consulting Agreement entered into between Kingsdown and Mr. Hinshaw on or about July 10, 2012 (the "Hinshaw Agreement" or, in context, the "Agreement").[12]

{71} Mr. Hinshaw first alleges that Kingsdown breached section 11(d) of the Agreement, which provides, in relevant part, that Kingsdown will "instruct its officers and directors not to (i) make any statements that are professionally disparaging about Hinshaw or his service to Kingsdown, or (ii) engage in any conduct that could reasonably be expected to harm Hinshaw's reputation." (Kingsdown Mot. Dismiss Hinshaw Countercl. Ex. A ¶ 11(d).)

{72} In particular, Mr. Hinshaw alleges that Kingsdown violated section 11(d) in three different ways:

a. by "failing to instruct, or failing to instruct in good faith, its Officers and Board of Directors not to (1) make any professionally disparaging statements about Mr. Hinshaw or his service to Kingsdown or (2) engage in conduct that could reasonably be expected to harm Mr. Hinshaw's reputation," (Hinshaw Countercl. ¶ 118);

b. by "making remarks and engaging in conduct that could reasonably be expected to harm Mr. Hinshaw's reputation, and by otherwise discussing Mr. Hinshaw's employment with and service to Kingsdown with third parties," (Hinshaw Countercl. ¶ 118); and

---

[12] The Hinshaw Agreement was discussed and relied upon in Hinshaw's Counterclaims but not attached as an exhibit. Plaintiff attached the Agreement as Exhibit A to Plaintiff's Motion to Dismiss Hinshaw's Counterclaims. The Court may consider this document without converting the Motion to one for summary judgment. *Oberlin Capital,* 147 N.C. App. at 60, 554 S.E.2d at 847.

c. "by filing this civil action and by making public statements that accused Mr. Hinshaw of engaging in fraudulent conduct and breaching his fiduciary duties to Kingsdown, which constituted professionally disparaging statements about Mr. Hinshaw and his service to Kingsdown, and also constituted conduct that could reasonably be expected to harm Mr. Hinshaw's reputation." (Hinshaw Countercl. ¶ 120.)

{73} Turning to the first alleged breach, Plaintiff contends that Mr. Hinshaw has simply made a "bald allegation" at paragraph 118 of his Counterclaims that section 11(d) was breached, and that without some factual support, his claim for alleged breach on this basis should be dismissed, citing *VisionAIR v James*, 167 N.C. App. 504, 510, 606 S.E.2d 359, 362 (2004).

{74} The Court agrees that "[a]bsent specific, supportive, factual allegations, the court need not accept as true general conclusory allegations of the elements of a cause of action for purposes of a motion to dismiss." *Global Promotions Grp., Inc. v. Danas Inc.*, 2012 NCBC LEXIS 40, at *12 (N.C. Super. Ct. June 22, 2012). Mr. Hinshaw points to other allegations in his Counterclaims, however, as factual support to sustain his claim.

{75} In particular, Mr. Hinshaw alleges that Mr. Hood told the press that "Kingsdown's shareholders were harmed as a result of the actions [of Mr. Hinshaw]," (Hinshaw Countercl. ¶ 95), that Kingsdown falsely alleged in its original complaint that "Mr. Hinshaw paid himself a salary of over $1 million a year" and "paid himself more than $10 million in bonuses and over $1.2 million in stock," (Hinshaw Countercl. ¶¶ 88–89), and that "over the objection of Mr. Hinshaw, [Mr. Hood] publicly announced that Mr. Hinshaw had retired effective immediately," which Mr. Hinshaw had advised "would be interpreted as him being fired, which would be harmful to his reputation in the industry." (Hinshaw Countercl. ¶¶ 81–82.)

{76} Although Plaintiff contends that these allegations are nothing more than speculation rather than properly pleaded supporting facts, (Kingsdown Reply Mot. Dismiss Hinshaw Countercl. 4), the Court concludes that, when viewed in the light most favorable to Mr. Hinshaw, these factual allegations are sufficient to permit Mr. Hinshaw's breach of contract claim on this theory to survive Plaintiff's Motion.

{77} Plaintiff next contends that dismissal of the claims based on the other alleged breaches of section 11(d) is proper because Mr. Hinshaw's remaining allegations in paragraph 118 and in paragraph 120 seek to enforce provisions that do not appear in the Agreement. In particular, Plaintiff argues that the conduct Mr. Hinshaw alleges—that Kingsdown made professionally disparaging remarks about Mr. Hinshaw and engaged in conduct which harmed his reputation—is not prohibited by the plain language of the Agreement.

{78} In response, Mr. Hinshaw contends that by engaging in the conduct set forth in paragraphs 87–92, 118, and 120, "Kingsdown breached (1) the disparagement provision and (2) the harmful-conduct provision of the Agreement," without citation to any specific provision of the Hinshaw Agreement. (Hinshaw Resp. Mot. Dismiss Hinshaw Countercl. 7.) Based on the Court's review of the Agreement, the only provision that reflects any sort of an agreement by Kingsdown relating to non-disparagement or conduct that might harm Mr. Hinshaw's reputation is section 11(d). By the plain language of that provision, however, Kingsdown's obligation was to "instruct its officers and directors" not to make professionally disparaging statements or engage in conduct that could reasonably be expected to harm Mr. Hinshaw's reputation, not to guarantee that any such conduct would never occur. Because the Court concludes that the factual allegations Mr. Hinshaw advances at paragraphs 87–92, 118, and 120 of his Counterclaims provide support for his claim that Plaintiff breached section 11(d), the Court will permit Mr. Hinshaw's breach of contract claim to proceed, but only to the

extent that claim is based on Kingsdown's alleged failure to instruct its officers and directors as provided under section 11(d) of the Agreement.

{79} Mr. Hinshaw next alleges that Kingsdown breached section 12 of the Agreement, which provides in relevant part that:

> Hinshaw and Kingsdown agree that Hinshaw and [Mr. Hood] will jointly determine how to announce Hinshaw's resignation from the Board and the termination of Hinshaw's employment from Kingsdown; provided, however, in the event Hinshaw and [Mr. Hood] disagree about this announcement, the Board will make the final determination regarding the manner, content and timing of the announcement.

(Kingsdown Mot. Dismiss Hinshaw Countercl. Ex. A ¶ 12.)

{80} Mr. Hinshaw argues that Kingsdown breached this provision primarily by "publicly announcing, over the objection of Mr. Hinshaw, that Mr. Hinshaw had retired from Kingsdown, effective immediately." (Hinshaw Countercl. ¶ 119.) Kingsdown moves to dismiss Mr. Hinshaw's claim, however, contending that "[a] statement about retirement is not the same as a statement about resignation/termination, and they should not be treated as tantamount." (Kingsdown Br. Supp. Mot. Dismiss Hinshaw Countercl. 5.) The Court cannot conclude, as Kingsdown's Motion requires, that, the terms "resignation" and "termination," as used in the Hinshaw Agreement, exclude the term "retired . . . effective immediately" as a matter of law. Accordingly, the Court concludes that Plaintiff's motion to dismiss Mr. Hinshaw's breach of contract claim on this basis should be denied.

### b. Defamation Per Se

{81} "North Carolina has long recognized the harm that can result from false statements that impeach a person in that person's trade or profession—such statements are deemed defamation per se." *Nguyen*, 219 N.C. App. at 8, 723 S.E.2d at 557–58. As described above, the mere saying or writing of the words is presumed to cause injury, and a plaintiff need not prove actual injury. *Id.*

> To fall within the class of slander per se as concerns a person's trade or profession, the defamatory statement "must do more than merely harm a person in [his] business. The false statement (1) must touch the plaintiff in [his] special trade or occupation, and (2) must contain an imputation necessarily hurtful in its effect on [his] business."

*Market Am., Inc. v. Christman-Orth*, 135 N.C. App. 143, 151, 520 S.E.2d 570, 577 (1999) (citation omitted).

{82} Here, Mr. Hinshaw alleges four sets of allegedly defamatory statements: (i) Mr. Hood's statements reported in the *Furniture Today* article that the Court has previously discussed in connection with Ms. Ray's defamation counterclaim, (Hinshaw Countercl. ¶ 97), (ii) Mr. Hood's statements "at a meeting of Kingsdown's shareholders and employees," (Hinshaw Countercl. ¶ 98), (iii) unidentified statements by Mr. Hood in which he "publicly blamed Mr. Hinshaw for leaving Kingsdown with a large amount of debt, when in fact Mr. Hinshaw did not leave Kingsdown with a large amount of debt," (Hinshaw Countercl. ¶ 99), and (iv) Mr. Hinshaw's conclusory allegation that "upon information and belief, Mr. Hood has since made similar disparaging statements about Mr. Hinshaw to others, including individuals involved in the mattress industry." (Hinshaw Countercl. ¶ 100.)

{83} The Court has previously determined that Mr. Hood's comments in the *Furniture Today* article did not constitute actionable defamation as to Ms. Ray. The Court concludes the same is true as those statements related to Mr. Hinshaw. As in the case of Ms. Ray, reading the allegedly offending statements in the full context of the article in which they appear makes plain to the average reader that both Mr. Hinshaw and Mr. Hood are describing their litigation positions and expressing confidence in their likelihood of success. Such statements do not constitute defamation per se. *See, e.g.*, *Daniels*, 179 N.C. App. at 539, 634 S.E.2d at 586. In addition, although Mr. Hinshaw complains about statements in the article that were quoted from Plaintiff's pleadings in this case, those statements are not actionable.

*Jarman v. Offutt*, 239 N.C. 468, 472, 80 S.E.2d 248, 251 (1954) ("[A] defamatory statement made in the due course of a judicial proceeding is absolutely privileged and will not support a civil action for defamation, even though it be made with express malice.") (citations omitted).

{84} As to Mr. Hood's alleged statements at the meeting of shareholders and employees, Mr. Hinshaw alleges that Mr. Hood falsely asserted that "Mr. Hinshaw had attempted to purchase certain of Kingsdown's international assets 'both before and after his departure,' reported that the Kingsdown "board decided the transaction would not have been a 'good deal' for Kingsdown, and stated that "'[i]f that would have happened, I would prognosticate that the company would not exist." (Hinshaw Countercl. ¶ 98.) Mr. Hinshaw contends that these alleged statements "harmed [his] character and reputation" by suggesting that "Mr. Hinshaw attempted to engage in an act of self-dealing that would have put Kingsdown on the wrong end of a bad deal and driven the company into the ground." (Hinshaw Resp. Br. Mot. Dismiss Hinshaw Countercl. 21.)

{85} The Court, however, must consider "how . . . ordinary men [would] naturally understand [Mr. Hood's statements]." *Renwick*, 310 N.C. at 318, 312 S.E.2d at 409 ("The principle of common sense requires that courts shall understand [allegedly defamatory statements] as other people would."). Applying that standard here, the Court concludes that the average reader would understand that Mr. Hood's statements reflected a difference in opinion about the wisdom of a corporate transaction—whether Mr. Hood accurately reflected Mr. Hinshaw's actions or opinions or not—and that the ordinary person would not ascribe them defamatory meaning. As such, the alleged statements "do not contain an imputation necessarily hurtful in its effect on [Mr. Hinshaw's] business," *Market Am.*, 135 N.C. App. at 151, 520 S.E.2d at 577 (internal citations, quotations and brackets omitted), and cannot therefore provide a basis for a defamation claim.

{86} The Court reaches a similar conclusion as to Mr. Hood's alleged statement falsely asserting that Mr. Hinshaw caused Kingsdown to incur a large amount of debt. Without more, such a statement, whether truthful or not, is "not necessarily hurtful" to Mr. Hinshaw's reputation. That Mr. Hood allegedly "blamed" Mr. Hinshaw for incurring this debt—which Mr. Hinshaw contends is "manifestly harmful to his business reputation"—merely reflects Mr. Hood's contrary opinion as to the wisdom of the alleged action and does not provide a basis for a defamation claim.

{87} Finally, Mr. Hinshaw's contention on information and belief that "similar disparaging statements" had been made to others is too non-specific to state a claim. *See Kingsdown*, 2015 NCBC LEXIS 30, at \*30–31 ("[I]n pleading a cause of action for defamation, a plaintiff must recount the allegedly defamatory statement either verbatim or at least with enough specificity to allow the Court to decide if the statement is defamatory.") (quotations and citations omitted).

{88} Based on the foregoing, the Court concludes that Mr. Hinshaw's defamation claim against Kingsdown should be dismissed.

    c. Section 75-1.1

{89} Mr. Hinshaw bases his section 75-1.1 claim primarily on the following alleged conduct of Kingsdown:

    a. "making defamatory statements regarding Mr. Hinshaw that impeached him in his trade or profession in order to prevent him from engaging in other employment;"

    b. "initiating and prosecuting this action, even though this action is based on information known to Kingsdown at the time it executed the [Hinshaw] Agreement;"

c. "seeking to rescind the Lease[13] and filing a Notice of Lis Pendens to cloud the title of the Ocean Isle Property even though the terms of which Lease were fully disclosed to Kingsdown's Board of Directors;" and

d. "amending its Bylaws in relation to its "right of first refusal" to purchase shares being sold or transferred by Kingsdown shareholders, by which amendment Kingsdown gave itself the unilateral option to exercise its right of first refusal by funding up to ninety percent of the purchase price of the shares with a promissory note payable over a five-year term."

(Hinshaw Countercl. ¶ 134.)

{90} Mr. Hinshaw also alleges that Kingsdown engaged in this conduct "with the intent to impose economic hardship on Mr. Hinshaw to place him in a position of having to sell his ownership interest in Kingsdown at an unfair, discounted price and/or with the intent of diminishing his ownership interest and influence in the Company." (Hinshaw Countercl. ¶ 135.)

{91} N.C. Gen. Stat. § 75-1.1(a) regulates "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." Our courts have held that a claim under section 75-1.1 "requires proof of three elements: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, which (3) proximately caused actual injury to the claimant." *Nucor*, 189 N.C. App. at 738, 659 S.E.2d at 488 (citation omitted).

{92} Further, "'[a] practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers,' and a 'practice is

---

[13] Mr. Hinshaw alleges that Kingsdown has improperly sought to rescind a lease agreement entered into in 1997 between Mr. Hinshaw, as lessor, and Kingsdown, as lessee, concerning Mr. Hinshaw's Ocean Isle Beach property. (Hinshaw Countercl. ¶¶ 37–46.)

deceptive if it has the capacity or tendency to deceive.'" *Bumpers v. Cmty. Bank of Va.*, 367 N.C. 81, 91, 747 S.E.2d 220, 228 (2013).[14]

{93}   A "[p]laintiff must first establish that [a] defendant['s] conduct was 'in or affecting commerce' before the question of unfairness or deception arises." *HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 592, 403 S.E.2d 483, 492 (1991).   Whether an act is "in or affecting commerce" is a question of law for the Court to decide.   *Hardy v. Toler*, 288 N.C. 303, 310, 218 S.E.2d 342, 346–47 (1975).   N.C. Gen. Stat. § 75-1.1 broadly defines "commerce" to include "all business activities, however denominated, but does not include professional services rendered by a member of a learned profession."   N.C. Gen. Stat. § 75-1.1(b).

{94}   Our courts have held that the term "business activities" "connotes the manner in which businesses conduct their regular, day-to-day activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized."   *White v. Thompson*, 364 N.C. 47, 52, 691 S.E.2d 676, 679 (2010).   To constitute "in or affecting commerce," the defendant's conduct "must affect commerce in a commercial setting, . . . not in a private relationship type setting such as corporate governance issues, . . . securities transactions, . . . or disputes arising from employment[.]"   *Kingsdown*, 2015 NCBC LEXIS 30, at *28 (quoting *In re Brokers, Inc.*, 396 B.R. 146, 161 (Bankr. M.D.N.C. 2008)).   Thus, the statute "is not intended to apply to all wrongs in a business setting," *HAJMM Co.*, 328 N.C. at 593, 403 S.E.2d at 492, but rather to "(1)

---

14   As recently summarized by one North Carolina federal court: "'Unfair or deceptive conduct' fairly may be categorized into five types: 1) general 'unfair' conduct that 'offends public policy . . . [or] is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers;' 2) 'deceptive' misrepresentations that have the capacity or tendency to deceive the average person; 3) per se violations of § 75-1.1 established upon proof of a statutory or regulatory violation or the commission of certain torts; 4) a breach of contract accompanied by aggravating circumstances; and 5) anti-competitive conduct." *Sparks v. Oxy-Health, LLC*, No. 5:13-CV-649-FL, 2015 U.S. Dist. LEXIS 134469, at *85 (E.D.N.C. Sept. 15, 2015) (applying North Carolina law) (citations and quotations omitted).

interactions between businesses, and (2) interactions between businesses and consumers." *White*, 364 N.C. at 52, 691 S.E.2d at 679.

{95} Mr. Hinshaw complains here that Kingsdown made false, defamatory statements about him, instituted this litigation, filed a notice of lis pendens on his property, and amended its Bylaws to his economic disadvantage "with the intent to impose economic hardship on Mr. Hinshaw" to force him "to sell his ownership interest in Kingsdown at an unfair, discounted price."[15] (Hinshaw Countercl. ¶ 135.)

{96} The Court first notes that although defamatory statements that harm a person in his trade, business, or profession may, in appropriate circumstances, constitute unfair and deceptive trade practices under section 75-1.1, *see, e.g., Nguyen*, 219 N.C. App. at 9, 723 S.E.2d at 558 (finding a section 75-1.1 violation where defendant "defam[ed] [plaintiffs] while profiting at their expense"), the Court has previously concluded that none of the allegedly defamatory statements here contain "an imputation necessarily hurtful in its effect" on Mr. Hinshaw's reputation or business. As a result, the Court concludes that these alleged statements cannot sustain Mr. Hinshaw's claim under section 75-1.1.

{97} In addition, North Carolina law is clear that "[m]atters of internal corporate management . . . do not affect commerce" for purposes of section 75-1.1. *Wilson v. Blue Ridge Elec. Mbrshp. Corp.*, 157 N.C. App. 355, 358, 578 S.E.2d 692, 694 (2003); *see also Kingsdown*, 2015 NCBC LEXIS 30, at *28–29 (dismissing UDTP claim which "plainly involve[d] internal business disputes rather than interactions with business or consumers"); *McKee v. James*, 2014

---

[15] Although our appellate courts have held that "[section 75-1.1] does not normally extend to run-of-the-mill employment disputes," *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 710 (2001), "the mere existence of an employer-employee relationship does not in and of itself serve to exclude a party from pursuing an unfair trade or practice claim." *Id.* The Court concludes that Mr. Hinshaw's relationship to Kingsdown under the facts alleged here— including that of lessor-lessee—does not preclude the applicability of section 75-1.1. *See, e.g., Sara Lee Corp. v. Carter*, 351 N.C. 27, 34, 519 S.E.2d 308, 312 (1999) ("Having already characterized defendant's conduct as buyer-seller transactions that fall squarely within the Act's intended reach, we conclude that defendant's relationship to plaintiff as an employee, under these facts, does not preclude applicability of [section 75-1.1].").

NCBC LEXIS 74, at *42 (N.C. Super. Ct. Dec. 31, 2014) (dismissing UDTP claim based on dispute between co-owners of business). As a result, Mr. Hinshaw's claim based on Kingsdown's amendments to its Bylaws reflects a matter of internal corporate management, which cannot provide the basis for a section 75-1.1 claim.

{98} The Court turns next to Mr. Hinshaw's allegation that Plaintiff has violated section 75-1.1 by "initiating and prosecuting this action, even though this action is based on information known to Kingsdown at the time it executed the [Hinshaw] Agreement," (Hinshaw Countercl. ¶¶ 134(b), 87), with the primary intent to force Mr. Hinshaw "to sell his ownership interest in Kingsdown at an unfair, discounted price." (Hinshaw Countercl. ¶ 135.) Although not addressed in his specific claim for relief, Mr. Hinshaw also alleges that Plaintiff knew that certain allegations in its initial complaint in this action were false when made. (Hinshaw Countercl. ¶¶ 88–94.)

{99} The Court finds instructive the federal district court's treatment of a somewhat analogous section 75-1.1 claim in *United States v. Ward*, 618 F. Supp. 884 (E.D.N.C. 1985). There, a third-party defendant alleged that the third-party plaintiff had brought claims it knew had no basis in law or fact "to harass" the third-party defendant, and "to injure or destroy [the third party defendant's] business and competitive position." *Id.* at 907. The federal district court recognized that because a party to a lawsuit has a right to advocate its position through the judicial process, the institution of a lawsuit could only be the basis for a UDTP claim if the lawsuit is a "mere sham" to cover an attempt to directly interfere with a competitor's business relationships. *Id.* The court concluded that "[o]nly actions undertaken without a genuine intent to influence the outcome of the dispute being adjudicated are a sham," *id.* (citation omitted), and that section 75-1.1 did not reach "a general abuse of process claim" like the one presented in that case. *Id.* (citation omitted).

{100} Here, Mr. Hinshaw does not plead that this action is a sham. To the contrary, he does not allege that Kingsdown released the claims it has brought in this action in the Hinshaw Agreement, has not sought to dismiss any of Plaintiff's claims based on the multiple defenses and objections permitted under N.C. R. Civ. P. 12, has not filed a Rule 11 motion contending that the action is not well grounded in fact or not warranted by existing law, and has not counterclaimed for malicious prosecution or abuse of process. The gist of his unfair trade practice claim is simply that Kingsdown delayed bringing claims that it knew it had a right to bring when it entered the Hinshaw Agreement in July 2012 until it filed this action on August 29, 2014. Such conduct in no way rises to the level of a violation of section 75-1.1. *See, e.g.*, *RE/MAX LLC v. M.L. Jones & Assocs.*, No. 5:12-CV-768-D, 2013 U.S. Dist. LEXIS 123863, at *11 (E.D.N.C. Aug. 29, 2013) (dismissing UDTP claim based on "sham litigation" where plaintiff "had probable cause to file this lawsuit and the action [was] not objectively baseless").

{101} Furthermore, the Court concludes that the institution of this action as pleaded here is not conduct "in or affecting commerce" as contemplated under section 75-1.1. *See In re Brokers*, 396 B.R. at 162–63 (holding that filing a complaint was not "in or affecting commerce" under section 75-1.1). Mr. Hinshaw has not pleaded facts beyond conclusory allegations that suggest that Kingsdown's filing has had "any effect on commerce" or has otherwise impacted the marketplace. Nor has Mr. Hinshaw alleged facts suggesting that the filing of the lawsuit is part of the "regular, day-to-day activities" of Kingsdown and thus fairly constitutes "business activities" under the statute. *See, e.g.*, *Wilson*, 157 N.C. App. at 358, 578 S.E.2d at 694 (finding bylaw change did not affect commerce under section 75-1.1 where "defendant was organized to provide electricity to the members of the utility cooperation" and "alteration of its by-laws by the board of directors is not a day-to-day, regular business activity").

{102} Finally, as to Kingsdown's alleged effort to rescind the lease agreement and the filing of the notice of lis pendens on Mr. Hinshaw's Ocean Isle Property, the Court first notes that real estate transactions are a type of transaction within the purview of the Act. *See Governor's Club, Inc.* v. *Governors Club Ltd. P'ship*, 152 N.C. App. 240, 250, 567 S.E.2d 781, 788 (2002) ("[T]he business of buying, developing and selling real estate is an activity 'in or affecting' commerce for the purposes of G.S. § 75-1.1."). Our courts have made it clear, however, that "not all wrongs in a real estate transaction are summarily 'in or affecting commerce,'" *James R. Carcano v. JBSS, LLC*, 200 N.C. App. 162, 175, 684 S.E.2d 41, 52 (2009).

{103} The gravamen of Mr. Hinshaw's claim is that Plaintiff has sought to rescind the lease and has filed the lis pendens based on Plaintiff's false assertion that the lease terms were never disclosed to or approved by Plaintiff's Board—an assertion which Mr. Hinshaw alleges Plaintiff knew to be demonstrably false when made. (Hinshaw Countercl. ¶¶ 65, 134(c)). In contrast to Mr. Hinshaw's UDTP claim based on the institution of this action, Mr. Hinshaw contends that Plaintiff knew that the factual basis for its effort to rescind the lease and its filing of the lis pendens was false, (Hinshaw Countercl. ¶¶ 33—70), took these actions in "an effort to impose an economic hardship on Mr. Hinshaw," (Hinshaw Countercl. ¶ 70), and knowingly "put a cloud on the title of the Ocean Isle Property and disparaged Mr. Hinshaw's property rights," (Hinshaw Countercl. ¶ 150), thereby causing him economic injury. (Hinshaw Countercl. ¶¶ 139, 151).

{104} The Court concludes that these allegations may constitute unfair and deceptive conduct under section 75-1.1, and further, that Plaintiff's alleged conduct was "in or affecting commerce," based on Mr. Hinshaw's allegations that Plaintiff's actions "disparaged Mr. Hinshaw's property rights," including his ability to sell the Ocean Isle Property to others in the marketplace. (Hinshaw Countercl. ¶¶ 69, 150.) *See generally Davis v. Sellers*, 115 N.C. App. 1, 8, 443 S.E.2d 879, 883–84 (1994) ("A person engaged

either directly or indirectly in the sale of real estate is engaged in commerce within the meaning of [section] 75-1.1.").  The Court also concludes that Mr. Hinshaw has sufficiently pleaded damages resulting from Plaintiff's alleged unfair and deceptive trade practices for purposes of Rule 12(b)(6).  As a result, the Court concludes that Mr. Hinshaw's counterclaim for unfair trade practices should not be dismissed to the extent it is based on Mr. Hinshaw's allegations concerning Plaintiff's efforts to rescind the lease agreement and its filing of a notice of lis pendens.[16]

d. Slander of Title

{105} "Slander of title of property may be committed and published orally or by writing, printing or otherwise." *Cardon v. McConnell*, 120 N.C. 461, 462, 27 S.E. 109 (1897).  "[T]he gist of the action is the special damage sustained, and unless the plaintiff shows the falsity of the words published, the malicious intent with which they were uttered, and a pecuniary loss or injury to himself, he cannot maintain the action." *Id.*

{106} To establish a claim of slander of title, a plaintiff must allege: "(1) the uttering of slanderous words in regard to the title of someone's property; (2) the falsity of the words; (3) malice; and (4) special damages." *Broughton*, 161 N.C. App. at 30, 588 S.E.2d at 28.

{107} Here, Mr. Hinshaw alleges that Kingsdown uttered false, malicious and slanderous words by filing the lis pendens on the Ocean Isle Property, seeking to impose constructive and resulting trusts on the Property, and

---

[16]  Kingsdown argues that because Mr. Hinshaw's UDTP claim is "premised on complaints that Kingsdown took affirmative steps to devalue his stock ownership and force him to sell his stock at an unfair price," his claim falls within "the exclusive province of the securities laws and cannot be regulated under Chapter 75." (Kingsdown Br. Supp. Mot. Dismiss Hinshaw Countercl. 10.)  *See Skinner v. E.F. Hutton & Co. Inc.*, 314 N.C. 267, 275, 333 S.E.2d 236, 241 (1985) (holding "securities transactions are beyond the scope of N.C. Gen. Stat. 75-1.1," principally because "'securities transactions . . . [are] already subject to pervasive and intricate regulation under the [state and federal securities laws].'").  The Court concludes, however, that the effort to rescind the lease and the filing of the lis pendens, which Mr. Hinshaw has not pleaded has resulted in Mr. Hinshaw's sale of his interest in Kingsdown, are too attenuated from the sale, purchase, trade, issuance, or redemption of securities to fall within the securities exception of the UDTP Act.

attempting to rescind the lease agreement and claim ownership of the Property. (Hinshaw Countercl. ¶¶ 148–51.) Mr. Hinshaw alleges that Kingsdown's actions have "put a cloud on the title of the Ocean Isle Property and disparaged Mr. Hinshaw's property rights," that Kingsdown "recognized, or should have recognized, that its slanderous words would . . . result in pecuniary harm to Mr. Hinshaw," and that he "has been and will be damaged by Kingsdown's slanderous statements in an amount to be proved at trial but in excess of $25,000." (Hinshaw Countercl. ¶ 150.)

{108} N.C. R. Civ. P. 9(g) provides that "[w]hen items of special damages are claimed each shall be averred." Our courts have interpreted Rule 9(g) to require that special damages "must be specifically pleaded and proved and the facts giving rise to the special damages must be sufficient to inform the defendant of the scope of plaintiff's demand." *Johnson v. Bollinger*, 86 N.C. App. 1, 11–12, 356 S.E.2d 378, 385 (1987).

{109} "'[G]eneral damages are such as might accrue to any person similarly injured, while special damages are such as did in fact accrue to the particular individual by reason of the particular circumstances of the case.'" *Penner v. Elliott*, 225 N.C. 33, 35, 33 S.E.2d 124, 126 (1945) (citations and quotations omitted). "Special damages are usually synonymous with pecuniary loss," *Iadanza v. Harper*, 169 N.C. App. 776, 779, 611 S.E.2d 217, 221 (2005), and are "[t]hose which are the actual, but not the necessary, result of the injury complained of, and which in fact follow it as a natural and proximate consequence in the particular case, that is, by reason of special circumstances or conditions." *Canady v. Mann*, 107 N.C. App. 252, 257, 419 S.E.2d 597, 600 (1992).

{110} Although Mr. Hinshaw has not alleged in the paragraphs specific to his claim for relief for slander of title that he has suffered pecuniary loss or any other items of special damages, he alleges that "[o]n June 18, 2015, Kingsdown filed a Notice of Lis Pendens in order to cloud the title of the

Ocean Isle Property and prevent Mr. Hinshaw from conveying the Ocean Isle Property." (Hinshaw Countercl. ¶ 69.)

{111} While this allegation does not aver that Mr. Hinshaw was in fact prevented from conveying the Ocean Isle Property, the Court concludes that this allegation, together with Mr. Hinshaw's allegations that Kingsdown "recognized or should have recognized" that Mr. Hinshaw would suffer "pecuniary harm," that Mr. Hinshaw "has been and will be damaged by Kingsdown's slanderous statements," and that Plaintiff's filing "put a cloud on the title of the Ocean Isle Property and disparaged Mr. Hinshaw's property rights," when viewed in the light most favorable to Mr. Hinshaw, is sufficient to put Kingsdown on notice of the "scope of plaintiff's demand." *Johnson,* 86 N.C. App. at 11–12, 356 S.E.2d at 385. As a result, the Court concludes that Mr. Hinshaw's slander of title claim should survive Kingsdown's motion. *See Sutton*, 277 N.C. at 103, 176 S.E.2d at 166 (permitting claim to survive where court cannot conclude "to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim").

e. Punitive Damages

{112} As set forth above, the Court concludes that Mr. Hinshaw's counterclaims for breach of contract, indemnification, unfair trade practices (in part), and slander of title should survive at this stage of the litigation. Although "[m]ere breaches of contract cannot support a claim for punitive damages," *Richardson*, 182 N.C. App. at 558, 643 S.E.2d at 427, the tort action of slander of title requires proof of malice, *Broughton*, 161 N.C. App. at 30, 588 S.E.2d at 28, and, if proven, may support an award of punitive damages. *See* N.C. Gen. Stat. § 1D-15 (listing "malice" as an aggravating factor). In addition, "[p]laintiffs may in proper cases elect to recover either punitive damages under a common law claim or treble damages under N.C. Gen. Stat. § 75-16, but they may not recover both." *Ellis*, 326 N.C. at 227, 388 S.E.2d at 132. As a result, based on the current posture of the case, the

Court concludes that Plaintiff's motion to dismiss Mr. Hinshaw's counterclaim for punitive damages should be denied.

IV.

CONCLUSION

{113} Based on the foregoing, the Court hereby **ORDERS** as follows:

a. The Court **GRANTS** Kingsdown's Motion to Strike, and hereby strikes and deems ineffective Ms. Ray's August 30 Amendment to Counterclaims.

b. The Court **GRANTS** Hood's Motion to Strike, and hereby strikes and deems ineffective Ms. Ray's August 30 Amendment to Third-Party Complaint.

c. The Court **GRANTS in part** and **DENIES in part** Kingsdown's Motion to Dismiss Ray's Counterclaims. The Court **GRANTS** Kingsdown's Motion to Dismiss Ray's Counterclaims for breach of contract and declaratory judgment on the basis of the Verbal Agreement and the Handbook, wrongful termination, and defamation, and **DISMISSES** each of these Counterclaims with prejudice. The Court **DENIES** Kingsdown's Motion to Dismiss Ray's Counterclaim for indemnification, and for breach of contract and declaratory judgment on the basis of the Written Agreement.

d. The Court **GRANTS** Hood's Motion to Dismiss Ray's Third-Party Complaint and hereby **DISMISSES** Ray's Third-Party Complaint against Hood with prejudice; and

e. The Court **GRANTS in part** and **DENIES in part** Kingsdown's Motion to Dismiss Hinshaw's Counterclaims. The Court **GRANTS** Kingsdown's Motion to Dismiss Hinshaw's Counterclaims for defamation per se and unfair and deceptive trade practices under section 75-1.1 (except as provided herein) and **DISMISSES** each of these Counterclaims with prejudice.

The Court **DENIES** Kingsdown's Motion to Dismiss Hinshaw's Counterclaims for breach of contract, indemnification, slander of title, and unfair and deceptive trade practices under section 75-1.1 (but only to the extent the section 75-1.1 claim is based on Plaintiff's efforts to rescind the lease agreement and file a notice of lis pendens on the Ocean Isle Property).

**SO ORDERED**, this the 17th day of February, 2016.


/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
  for Complex Business Cases